UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

TARELLE D. JONES,

        Plaintiff,                  Case No. 2:24-cv-212

v.                                        Honorable Maarten Vermaat

J. CLARK et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.[1] The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

---

[1] Plaintiff identifies himself as "Tarelle D. Stephens" in his complaint and indicates that his "[a]lias name" is "Tarelle D. Jones"; however, Plaintiff's inmate number corresponds to "Tarelle D. Jones." *See* Mich. Dep't of Corrections Inmate Locator, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=757671 (last visited Jan. 13, 2024); (*see also* ECF No. 1, PageID.5.) The Court, therefore, uses "Tarelle D. Jones" in the case caption of this action.

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under

the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint without prejudice for failure to state a claim. Additionally, the Court will deny Plaintiff's motion to appoint counsel.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff sues the MDOC and the following URF officials: Assistant Deputy Warden of Housing J. Clark, Prison Counselor M. Davidson, Resident Unit Manager Unknown Lacrosse, and Assistant Resident Unit Manager Supervisor D. Garlinhouse. (Compl., ECF No. 1, PageID.2.) Plaintiff also sues the following ECF officials: Assistant Deputy Warden J. Erway, Assistant Resident Unit Manager M. Turner, and Grievance Coordinator T. Bassett. (*Id.*, PageID.5–6.)

In Plaintiff's complaint, he alleges that the MDOC "and staff members denied [his] request for protection multiple times forcing [Plaintiff] back into [g]eneral population."[3] (*Id.*, PageID.3.) Plaintiff claims that "[t]he defendants denied [his] request [on] February 9, 2024, [and] then [he] was assaulted inside [his] housing cell [on] May 25, 2024, by two prisoners." (*Id.*) Thereafter, Plaintiff requested "prisoner protection." (*Id.*) Plaintiff states that his request was denied on May 28, 2024, and he was "placed back into general population" at URF. (*Id.*) Plaintiff claims that "[t]he defendants knew that [Plaintiff] was attacked inside of [his] housing cell . . . during a Security Classification Court meeting where [Plaintiff] was denied prisoner protection." (*Id.*)

Subsequently, on September 14, 2024, at URF, Plaintiff "was attacked by another prisoner." (*Id.*) Plaintiff states that prior to this attack, Plaintiff had "notified the unit officers . . . that [he] was in danger" on August 23, 2024. (*Id.*) Plaintiff also states that "the defendants have a file of . . . class 1 [misconduct charge] for fighting on that day of September 14, 2024." (*Id.*, PageID.5.)

Plaintiff alleges that he "was denied prisoner protection 3 times by the defendants," and he was then "later assaulted by 3 different prisoners." (*Id.*) Plaintiff states that he was found not guilty of fighting misconduct charges for the May and September incidents at URF. (*Id.*) Plaintiff was transferred to a new facility, presumably ECF, on September 19, 2024. (*Id.*)

---

[3] In this opinion, the Court corrects the punctuation in quotations from Plaintiff's complaint.

Plaintiff also attached the following documents to his complaint: (i) a Request for Protection/Investigation Report from ECF dated November 12, 2024, listing non-party Sergeant Janis as the investigator; (ii) a Prisoner/Parolee Grievance Form authored by Plaintiff, which is dated September 16, 2024, (iii) a handwritten letter addressed to the "ECF Grievance Coordinator," requesting "an appeal form," which is dated December 3, 2024; (iv) a "First Step Grievance Receipt" from Defendant Bassett dated December 2, 2024, confirming that Plaintiff's Step I grievance had been received; and (v) a Segregation Behavior Review form, which was signed by Defendants Turner and Erway on November 21, 2024, indicating that Plaintiff would be placed in segregation. (ECF No. 1-1, PageID.10–14.)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise Eighth Amendment failure to protect claims against Defendants. The Court also construes Plaintiff's complaint to raise Fourteenth Amendment due process claims against Defendants Erway, Turner, and Bassett, as well as a First Amendment claim against Defendant Bassett regarding petitioning the government. As relief, Plaintiff seeks monetary damages. (Compl., ECF No. 1, PageID.4.)

## II.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel, requesting the appointment of counsel "due to[] [his] indigent status." (ECF No. 4, PageID.23.)

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the

issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) therefore will be denied.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant MDOC

Plaintiff names the MDOC as a Defendant (Compl., ECF No. 1, PageID.2); however, Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff has failed to state a claim against the MDOC upon which relief can be granted.

Accordingly, Defendant MDOC and Plaintiff's claims against the MDOC will be dismissed for failure to state a claim.

### B. Defendants Clark, Davidson, Lacrosse, and Garlinhouse

As explained below, Plaintiff fails to allege sufficient facts showing how Defendants Clark, Davidson, Lacrosse, and Garlinhouse, all of whom Plaintiff identifies as officials at URF, were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff refers generally to "the defendants" "staff members," and "officers" in the body of his complaint; however, Plaintiff does not name any individuals in the body of his complaint, and Defendants Clark, Davidson, Lacrosse, and Garlinhouse are not named in any of the attachments to Plaintiff's complaint. The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).

8

And, "[s]ummary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff refers only to "the defendants," "staff members," and "officers" in his complaint, and this is insufficient to show that Defendants Clark, Davidson, Lacrosse, and Garlinhouse were personally involved in the alleged violations of Plaintiff's constitutional rights. And, Plaintiff's claims against Defendants Clark, Davidson, Lacrosse, and Garlinhouse fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Accordingly, for these reasons, Plaintiff's claims against Defendants Clark, Davidson, Lacrosse, and Garlinhouse will be dismissed without prejudice.

### C.      Defendants Erway, Turner, and Bassett

As to Defendants Erway, Turner, and Bassett, all of whom Plaintiff identifies as officials at ECF, Plaintiff also fails to name these individuals in the body of his complaint. (*See generally* Compl., ECF No. 1.) For this reason alone, these Defendants and Plaintiff's claims against them can be dismissed for failure to state a claim. Moreover, for the additional reasons set forth below, Plaintiff's claims against Defendants Erway, Turner, and Bassett are subject to dismissal.

#### 1.      Defendants Erway and Turner

Although Plaintiff does not name Defendants Erway and Turner in the body of his complaint, Plaintiff attached the following document to his complaint, which, liberally construing *pro se* Plaintiff's filings, as the Court is required to do at this stage, suggests some involvement by Defendants Erway and Turner, both of whom work at ECF: a Segregation Behavior Review, which was signed by Defendants Turner and Erway on November 21, 2024, indicating that Plaintiff was being placed in segregation at ECF. (ECF No. 1-1, PageID.14.) The Court generously construes

9

*pro se* Plaintiff's complaint, including the attachments, to raise Eighth Amendment failure to protect claims and Fourteenth Amendment due process claims against Defendants Erway and Turner.

### a.     Eighth Amendment Failure to Protect Claims

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

In this action, Plaintiff alleges that while he was incarcerated at URF, he requested "prisoner protection" on three occasions, including after attacks against him by other prisoners on May 25, 2024, and September 14, 2024, respectively, but that despite his requests, he continued to be housed in general population. (Compl., ECF No. 1, PageID.3.) Plaintiff states that he was transferred to a new facility, presumably ECF, on September 19, 2024. (*Id.*) The Segregation Behavior Review form, which was signed by Defendants Turner and Erway on November 21, 2024, indicates that Plaintiff was being placed in segregation due to his "Inability To Be Managed

With GP Privileges" and indicates that Plaintiff had requested protection on November 12, 2024, at ECF. (ECF No. 1-1, PageID.14 (capitalization in original retained).)

To the extent that Plaintiff seeks to hold Defendants Erway and Turner liable for the failure to protect him from the prisoner attacks at URF, as explained below, Plaintiff fails to state such a claim. Specifically, Plaintiff alleges no facts to suggest that Defendants Erway and Turner, both of whom work at ECF, had any involvement in Plaintiff's incarceration at URF. (*See generally* Compl., ECF No. 1; ECF No. 1-1, PageID.14.) Therefore, Plaintiff necessarily fails to show that Defendants Erway and Turner knew that Plaintiff faced any risk of harm at URF, let alone a substantial risk of serious harm and disregarded it.

Moreover, as to Plaintiff's request for protection at ECF on November 12, 2024, which is documented in the November 21, 2024, Segregation Behavior Review form, Plaintiff fails to allege any facts to show that Defendants Erway and Turner disregarded a substantial risk of serious harm to Plaintiff. As set forth in the Segregation Behavior Review form dated November 21, 2024, rather than be placed in general population, which is where all of the prisoner attacks at URF had occurred, Plaintiff was placed in segregation at ECF. (ECF No. 1-1, PageID.14.) Besides the attached form, Plaintiff alleges no further facts about the matter. And, Plaintiff does not allege that by classifying him to segregation, Defendants Erway and Turner disregarded any substantial risk of serious harm to Plaintiff.

Accordingly, for all of the reasons set forth above, under the circumstances alleged by Plaintiff in his complaint, he fails to state any Eighth Amendment failure to protect claims against Defendants Erway and Turner.

### b.     Fourteenth Amendment Due Process Claims

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).

11

To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Further, in *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff does not allege that his placement in segregation at ECF affected the duration of his sentence, and, as explained below, he fails to show that his placement in segregation

constituted an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only lengthy periods of segregation, such as periods lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest).

Based on the facts alleged in Plaintiff's complaint, the duration of Plaintiff's placement in segregation is unclear; however, Plaintiff alleges no facts to suggest that he was held in segregation for an extended period of time. Under these circumstances, Plaintiff fails to allege any facts to show that he was held in segregation for a period of time that would constitute an atypical and significant deprivation.

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his placement in segregation.

### 2. Defendant Bassett

Although Plaintiff also does not name Defendant Bassett in the body of his complaint, Plaintiff attached the following documents to his complaint, which, liberally construing *pro se* Plaintiff's filings, suggest some involvement by Defendant Bassett, the ECF Grievance Coordinator: a handwritten letter addressed to the "ECF Grievance Coordinator," requesting "an appeal form," which is dated December 3, 2024; and a "First Step Grievance Receipt" from

Defendant Bassett dated December 2, 2024, confirming that Plaintiff's Step I grievance had been received. (ECF No. 1-1, PageID.12, 13.)

As an initial matter, Plaintiff alleges no facts to suggest that Defendant Bassett failed to protect Plaintiff in any manner. (*See generally* Compl., ECF No. 1.) Therefore, any intended Eighth Amendment failure to protect claim against Defendant Bassett will be dismissed for failure to state a claim.

Furthermore, although in the body of Plaintiff's complaint and in the attachments, Plaintiff does not allege that his right to access the grievance process was inhibited in any manner, the Court generously construes Plaintiff's complaint to raise claims under the First and Fourteenth Amendments against Defendant Bassett regarding Plaintiff's use of the grievance procedure.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with the grievance process, did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the

14

government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendant Bassett's actions did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, Defendant Bassett and any intended claims against Bassett will be dismissed for failure to state a claim.

## Conclusion

For the foregoing reasons, Plaintiff's motion to appoint counsel (ECF No. 4) will be denied. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue

Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   January 31, 2025                                     /s/ *Maarten Vermaat*
                                                              Maarten Vermaat
                                                              United States Magistrate Judge